*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF LILLIAN LOVE BALLARD, by
JILLIAN DONNERT, Personal Representative,

        Plaintiff-Appellee,

v

GENESEE PEDIATRIC, PC, and MANAR ABED
HAMMOUD, M.D.,

        Defendants-Appellants,

and

SCOTT E. BALLARD,

        Appellant.

UNPUBLISHED
June 4, 2019

No. 344474
Genesee Circuit Court
LC No. 16-106477-NH

Before: SHAPIRO, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

In this wrongful-death action, appellant, Scott E. Ballard, appeals by right the stipulated dismissal order entered pursuant to a settlement reached between plaintiff, Jillian Donnert, as Personal Representative of the Estate of Lillian Love Ballard, and defendant Genesee Pediatric, PC,[1] following the death of Donnert's and Ballard's five-year-old daughter, Lillian. Ballard objected to the proposed distribution of the settlement proceeds, under which he was to receive $4,000; he argued that he should receive one-half of the net settlement proceeds after distribution of costs and attorney fees. Following a hearing, the trial court rejected Ballard's request for one-half of the proceeds and instead awarded him $12,000. We affirm.

---

[1] Defendant Manar Abed Hammoud, M.D., was previously dismissed from the case with prejudice by stipulation of the parties.

-1-

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

In 2007, Lillian was born to Donnert and Ballard, who never married.  When Lillian was about seven months old, Ballard joined the Michigan National Guard and deployed for training.  Sometime thereafter, the couple's relationship ended.  Ballard served overseas from late 2011 until late 2012, after which he was discharged and returned home to Flint, Michigan.  In 2013, Lillian died from an anaphylactic reaction after ingesting a product containing milk at Genesee Pediatric.  The probate court appointed Donnert as the personal representative of Lillian's estate and she pursued a wrongful-death action against defendants.  In May 2018, plaintiff and Genesee Pediatric reached a confidential settlement agreement.

Plaintiff filed a motion for the trial court to approve the settlement amount and proposed distribution, under which the majority of the net proceeds after costs were to be distributed to Donnert, with only $4,000 to be distributed to Ballard.  Soon after, Ballard entered an appearance as an interested party under MCL 600.2922(3) and objected to the settlement distribution.  Ballard claimed that he had a "close relationship" with his daughter, had "lost the comfort and companionship of his daughter as a result of her death," and had provided financial support to her during her life.  Ballard gave "Notice of his Claim for an equitable share of the settlement proceeds to be distributed by the Court" and requested half of the settlement proceeds.  The trial court conducted an evidentiary hearing, heard testimony from the parties, examined evidence, and ruled that plaintiff's motion should be approved, with the exception that Ballard should receive $12,000 instead of $4,000.

## II.  ANALYSIS

### A.  STANDARD OF REVIEW

This Court reviews for clear error a trial court's decision on the distribution of settlement proceeds in a wrongful-death action.  *Reed v Breton*, 279 Mich App 239, 241; 756 NW2d 89 (2008).  Clear error occurs "when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made."  *Id*. at 241-242 (quotation marks and citation omitted).  "If the reviewing court determines that the trial court made a mistake, it will then substitute its own appraisal of the record and reduce damages or conditionally affirm the award."  *In re Claim of Carr*, 189 Mich App 234, 238; 471 NW2d 637 (1991).  Findings of fact are also reviewed for clear error.  *Id*.; MCR 2.613(C).  Finally, interpretation of statutes and the court rules are questions of law reviewed de novo.  *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

### B.  DISCUSSION

Ballard argues that the trial court clearly erred in awarding him only $12,000.  We disagree.

MCL 600.2922 permits wrongful-death actions to be brought on behalf of a person who, had death not occurred, would have been able to bring the action and recover damages.  MCL 600.2922(1).  The personal representative of the deceased's estate must bring actions on behalf

of the estate and the interested parties to the estate. MCL 600.2922(2). Those entitled to damages under this section include "[t]he deceased's spouse, children, descendants, parents, grandparents, brothers and sisters . . . ." MCL 600.2922(3)(a). "Under the Michigan wrongful death act, the trial court is required to hold a hearing and approve the distribution of the proceeds of any settlement." *Reed*, 279 Mich App at 242 (quotation marks and citations omitted). Under MCL 600.2922(6)(d),

> the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased. *The proceeds of a settlement or judgment in an action for damages for wrongful death shall be distributed as follows*:
>
> \* \* \*
>
> (d) After a hearing by the court, the court shall order payment from the proceeds of the reasonable medical, hospital, funeral, and burial expenses of the decedent for which the estate is liable. The proceeds shall not be applied to the payment of any other charges against the estate of the decedent. *The court shall then enter an order distributing the proceeds to those persons designated in subsection (3) who suffered damages and to the estate of the deceased for compensation for conscious pain and suffering, if any, in the amount as the court or jury considers fair and equitable considering the relative damages sustained by each of the persons and the estate of the deceased. . . .* [Emphasis added.]

Although MCL 600.2922 provides the proper procedure for a trial court to follow when distributing a settlement, it "provides little guidance in deciding how to arrive at a distribution that is 'fair and equitable.' " *Carr*, 189 Mich App at 237-238. There exists "no precise formula for determining damages for loss of a loved one's society and companionship." *Id*. at 238. "The only reasonable measure of the actual destruction caused is to assess the type of relationship the decedent had with the claimant in terms of objective behavior as indicated by the time and activity shared and the overall characteristics of the relationship." *Id*. at 239. See also *McTaggart v Lindsey*, 202 Mich App 612, 616; 509 NW2d 881 (1993). If the trial court determines the award, then "we will review it to determine if there is evidence to support the distribution of the estate on the basis of the parties' relationships to the decedent." *Carr*, 189 Mich App at 238.

At the evidentiary hearing, Donnert testified that she was Lillian's primary custodian and that Ballard was minimally involved in Lillian's life. He was minimally involved financially, as he was behind on child support at the time of her death, he failed to report his military raises for purposes of child support, he did not provide her with a portion of the military housing credit he had obtained for support of his dependents, and he did not pay for medical or funeral expenses after Lillian died. He was also minimally involved physically and emotionally. He joined the military when Lillian was a baby and did not Facetime her while he was away and she was with

Donnert.  When home, he did not attend the many medical appointments required due to Lillian's significant problems with asthma and allergies, and he rarely saw her after his discharge from the military.

Ballard relies extensively on photographs he presented to the trial court that depict Ballard, his family, and Lillian on various special occasions, such as birthdays, holidays, or special outings, and which he contends prove he had a close relationship with Lillian.  Although Donnert did not dispute the accuracy of the photographs, she testified, "these pictures are a few instances where I wanted her to spend time with him.  You know . . . take your daughter, you rarely see her."  Donnert pointed out that there were "no pictures from like four on in this booklet.  So towards the end he really rarely saw her [because] she was five and a half when she passed away."[2]  Donnert further testified, "there is so much throughout her life that I felt they could have stepped up and did better."  Donnert's testimony indicated that the photos did not represent Ballard's efforts to spend consistent time with Lillian but, rather, they represented *Donnert's* efforts to have Ballard visit with Lillian.  In fact, Donnert testified that she actively encouraged Ballard to spend time with Lillian and that, even though Ballard was not active in Lillian's life, she still wanted Lillian to love her dad.  Accordingly, contrary to Ballard's assertions, these photographs did not require the trial court to find in his favor.  Taken in the context of Donnert's testimony, the trial court could have concluded that the photos depicted isolated incidents of Donnert's efforts to foster a relationship between Ballard and Lillian.

Ballard further argues that he intended to obtain shared custody of Lillian.  However, Ballard testified only that he had gone "down to the courthouse," without explaining what specific steps he took, if any, to obtain shared custody.  Ballard presented no other evidence to support the contention that he intended to obtain custody or had been actively seeking to obtain custody when Lillian became ill.  Additionally, although Donnert acknowledged that Ballard provided medical insurance for Lillian through the military and had stayed at the hospital "the whole time" leading up to Lillian's death, this did not change the fact that there was ample testimony showing that he had not been actively involved in Lillian's life *prior* to her illness and death.  Ballard's relationship with Lillian was to be measured through "objective behavior as indicated by the time and activity shared and the overall characteristics of the relationship." *Carr*, 189 Mich App at 239.  The evidence amply supported findings that Ballard had a minimal relationship with Lillian throughout most of her life and that $12,000 constituted a fair and equitable distribution in light of this minimal relationship.

Witness credibility must be left to the trier of fact.  See *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 544; 854 NW2d 152 (2014).  Although the trial court found Ballard's testimony sufficiently persuasive to triple his proposed distribution, it did not find his testimony persuasive enough to grant his request for half of the settlement proceeds.  Viewing the entirety

---

[2] Ballard explains on appeal that there are no pictures from the time Lillian is four-years-old onward because for most of that time, he was stationed overseas.  Donnert testified, however, that even after he was discharged, had returned to Flint, and lived only a few houses away, Ballard saw Lillian only a few times prior to her final illness in March 2013.

of the evidence, we are not "left with a definite and firm conviction that a mistake has been made." *Reed*, 279 Mich App at 242 (quotation marks and citations omitted).  The trial court did not clearly err in its distribution of the settlement proceeds.

Affirmed.


/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Jane M. Beckering